IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                                           **CRIMINAL ACTION No.: 3:21-cr-37-HTW-LGI**

**RENE RAFAEL RIZO, et al.**

---

**ORDER**

---

BEFORE THE COURT is the *Motion to Suppress Evidence* filed by defendant Rene Rafael Rizo ("Defendant" or "Rizo") [Doc. 78]; the Government's Response in Opposition [Doc. 79]; and Defendant's Reply [Doc. 87]. Defendant seeks to suppress all physical evidence and statements obtained by law enforcement following a March 24, 2021, roadside encounter between law enforcement and Defendant on Interstate 20 in Rankin County, Mississippi. Defendant contends that law enforcement: (1) initiated the traffic stop without reasonable suspicion or probable cause; and/or (2) escalated the encounter into a *de facto* arrest without probable cause.

The Government, contrariwise, contends that Rankin County Deputy Sheriff Ron Decell ("Deputy Decell") possessed reasonable suspicion and probable cause to stop Defendant for careless driving, and that the subsequent detention and investigation complied with the rigors of the Fourth Amendment to the United States Constitution. Having considered the parties' submissions, applicable Fifth Circuit precedent and the record, the Court grants Defendant's motion for the reasons set forth below.

## I.    FACTUAL BACKGROUND[1]

On March 24, 2021, at approximately 8:30 a.m., Deputy Decell, while on regular surveillance, observed a Ford Expedition ("The Expedition") traveling eastbound on Interstate 20 near mile marker 65 in Rankin County, Mississippi. The Expedition displayed a valid temporary Texas license plate and was being driven by Defendant Rizo, a United States citizen living in Houston, Texas. Co-defendant Rudy Jaramillo rode in the front passenger seat.  Approximately fourteen (14) male passengers occupied the rear seats. Deputy Decell was positioned off the interstate, monitoring traffic when The Expedition passed his location.

According to Deputy Decell's report, he saw The Expedition cross the fog line on the outer edge of the interstate and cross toward or onto the center line "a couple of times," which he characterized as "careless driving" in violation of Mississippi Code Annotated § 63-3-1213, which provides that "[a]ny person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." Deputy Decell then pulled onto I-20 eastbound, activated his blue lights, which triggered the patrol-car dash-camera, and followed The Expedition until it moved onto the shoulder and came to a stop.

The dash-camera video shows The Expedition's right tires on or near the fog line as Deputy Decell approaches. The defense contends that Rizo parked his car in this manner to  yield to an approaching emergency vehicle, as required by Mississippi Code Annotated section 63-3-809(1)[2].

---

[1] The following facts are compiled from the following sources and events: Deputy Decell's Report; Dash-Camera Video; Direct Statements, which this court heard on the audio/video recording of the encounter and in-court testimony. At the Suppression Hearing conducted on April 10, 2025, this his Court heard testimony from Deputy Decell and Homeland Security Special Agent Brent Young.

[2] That statute directs that "[u]pon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right-of-way

After exiting his marked patrol car, Deputy Decell approached the passenger-side of Rizo's vehicle and, through the window, requested Rizo's driver's license and travel information. During roughly the first twenty seconds of this initial contact, Rizo and Deputy Decell engaged in an abrupt conversation. Rizo, replying to Deputy Decell's inquiry where they were headed, stated that he and the passengers were "going to work." Decell replied: "Work, man? Don't bullshit me. You want me to call immigration right now and take your ass to jail? You're not going to work. You're bringing all these guys illegally across my country." Decell then asked who owned the vehicle and how much Rizo was being paid, apparently having concluded that the occupants were unlawful aliens and that Rizo was transporting them illegally.

Deputy Decell returned to his patrol car and requested the assistance of immigration officers and other law-enforcement personnel, including a deportation or immigration officer. Upon their arrival, the other officers detained Rizo and all passengers on the roadside and ultimately transported them elsewhere for further questioning[3]. Rizo was arrested.

---

and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a law enforcement officer." Miss. Code Ann. § 63-3-809(1).

[3] It is unclear from the record whether law enforcement transported Defendant to an immigration customs and border patrol (ICE) facility or to Rankin County detention center.

Later, a grand jury formally charged Rizo with transporting fourteen (14) undocumented non-citizens for commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)[4] and (B)(i)[5], and 18 U.S.C. § 2[6].

Rizo, represented by counsel, after being indicted, thereafter moved to suppress all evidence derived from the stop, arguing that: (1) the initial stop lacked reasonable suspicion or probable cause, corroborated by the video, which shows that Rizo lawfully yielded to an emergency vehicle, which accounts for his driving maneuvers contrary to "careless driving"; and (2) Deputy Decell converted the encounter into a *de facto* arrest without probable cause demonstrated from Deputy Decell's predetermined decision to arrest Rizo on the charge of alien smuggling, to call immigration authorities, when such determination of criminality had been reached by Deputy Decell almost immediately upon contact with Rizo and clearly before Deputy Decell had conducted any confirming investigation.

## II.    APPLICABLE LEGAL STANDARDS

A traffic stop constitutes a seizure under the Fourth Amendment and is evaluated under the two-part framework of *Terry v. Ohio*, 392 U.S. 1 (1968). Under Fifth Circuit jurisprudence,

---

[4] The relevant provision punishes persons who "**(ii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;" 8 U.S.C.A. § 1324 (West)

[5] A person who violates subparagraph (A) shall, for each alien in respect to whom such violation occurs-- **(i)** in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than 10 years, or both; 8 U.S.C.A. § 1324 (West)

[6] **(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
**(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
18 U.S.C.A. § 2 (West)

this Court must conduct a two-pronged analysis: (1) whether the officer's decision to stop the vehicle was justified at its inception; and (2) whether the officer's subsequent actions were reasonably related in scope and duration to the circumstances that justified the stop, or to additional reasonable suspicion not present at the time of the stop, but that emerged during the encounter[7]. *See United States v. Lopez-Moreno*, 420 F.3d 420, 430–31 (5th Cir. 2005); *United States v. Brigham*, 382 F.3d 500, 506–10 (5th Cir. 2004) (en banc).

Under the first prong, an officer may lawfully initiate a traffic stop if he has at least reasonable suspicion--an objectively reasonable, articulable basis--to believe that a traffic violation has occurred, or is occurring. *Lopez-Moreno*, 420 F.3d at 430; *United States v. Valadez*, 267 F.3d 395, 397-378 (5th Cir. 2001). Reasonable suspicion is evaluated under the totality of the circumstances and requires more than a hunch but less than probable cause, taking into account the officer's training and experience as well as the defendant's conduct. *See United States v. Arvizu*, 534 U.S. 266, 273–74 (2002).

Under the second prong, the officer's actions must remain tied to and justified by the mission of the stop, such as addressing the traffic violation and attending to related safety concerns. *See Rodriguez v. United States*, 575 U.S. 348, 354–57 (2015); *United States v. Macias*, 658 F.3d 509, 518–19 (5th Cir. 2011). The stop may not be prolonged beyond the time reasonably required to complete traffic-related tasks (checking license, registration, and warrants and issuing a citation or warning), unless additional reasonable suspicion develops to justify further detention. *See*

---

[7] In *United States v. Lopez-Moreno*, 420 F.3d 420, 430–31 (5th Cir. 2005), the Court stated: "The second prong of the *Terry* inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop ...." *United States v. Brigham,* 382 F.3d 500, 507 (5th Cir.2004) (en banc). In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Id.* at 507–08. An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508. Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which *Terry*'s second prong is aimed." *Id."*

*Brigham*, 382 F.3d at 507–10; *Lopez-Moreno*, 420 F.3d at 431; *United States v. Dortch*, 199 F.3d 193, 200–02 (5th Cir. 1999); *United States v. Jones*, 234 F.3d 234, 241–42 (5th Cir. 2000).

A *de facto* arrest occurs when a reasonable person in the suspect's position would understand that he is not free to leave and is in custody, even if officers do not utter the words "you are under arrest." *See United States v. Johnson*, 846 F.2d 279, 283 (5th Cir. 1988) (citing *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc)).

A warrantless arrest must rest on probable cause, *i.e.* facts and circumstances within the officer's knowledge sufficient to warrant a reasonable belief that the suspect has committed or is committing an offense. See *United States v. Zavala*, 541 F.3d 562, 575–80 (5th Cir. 2008).

When a defendant challenges a warrantless stop and seizure, the Government bears the burden of proving by a preponderance of the evidence that the challenged conduct complied with the Fourth Amendment. *See*, e.g., *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

The exclusionary rule applies to violations of the Fourth Amendment and "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963).

The Fifth Circuit repeatedly has applied this fruit-of-the-poisonous-tree doctrine, holding that "all evidence derived from the exploitation of an illegal seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." *United States v. Portillo-Aguirre*, 311 F.3d 647, 658 (5th Cir. 2002). *See also Dortch*, 199 F.3d at 200–02 (requiring suppression where officers illegally prolonged a traffic stop); *Jones*, 234 F.3d at 241–

42 (same); *Macias*, 658 F.3d at 518–19 (holding that prolonging a traffic stop for a dog sniff absent independent reasonable suspicion violates the Fourth Amendment and triggers suppression).

### III.   ANALYSIS

#### A.  Initial Justification for the Stop

The Government argues that Deputy Decell had at least reasonable suspicion, and, indeed, probable cause, to stop defendant for careless driving under Mississippi Code Annotated § 63-3-1213 because Deputy Decell observed The Expedition crossing the fog line and center line several times. The Government relies on decisions such as *United States v. Escalante*, 239 F.3d 678 (5th Cir. 2001), and *United States v. Rosales-Giron*, 592 F. App'x 246 (5th Cir. 2014), which upheld stops where officers observed vehicles weaving across lane markers in a manner reasonably construed as careless or unsafe under Mississippi's careless-driving statute.

Defendant responds that the dash-camera video supports a different conclusion: that Defendant moved toward the fog line and shoulder to yield to the approach of an emergency vehicle, as required by § 63-3-809(1), and that any brief contact with the fog line occurred as part of that yielding maneuver, rather than as a characteristic of careless or imprudent driving. The defense emphasizes that the Government bears the burden of demonstrating that the specific movements observed, taken in context and viewed objectively, amounted to careless driving, rather than lawful compliance with Mississippi's move-over statute.

The critical question is whether, under the totality of the circumstances depicted in the video and described in the record, an objectively reasonable officer would suspect that Rizo violated the careless-driving statute, as opposed to yielding to the patrol car's approach. Unlike the sustained weaving and repeated lane departures described in *Escalante* and similar cases, the record here reflects a brief movement toward and onto the fog line contemporaneous with the

patrol car's activation of blue lights and rapid approach, consistent with a motorist's effort to clear the right lane as contemplated by § 63-3-809(1). The Government has not shown  an additional indicia of impaired or unsafe driving, such as significant speed fluctuation; prolonged failure to maintain lane; near-collisions; or other circumstances, beyond the fog-line contact associated with yielding.

Nor does the record indicate that Decell cited or warned Rizo for careless driving separate from the immigration-related investigation, further underscoring that his focus almost immediately shifted from traffic enforcement to suspected alien smuggling. On this record, and viewing the facts through the lens required by *Terry* and its Fifth Circuit progeny, the Court concludes that the Government has not carried its burden to demonstrate that the initial stop was justified at its inception under the first prong of *Terry*. The Government has not argued any alternative justification for the seizure; therefore, in this Court's eye, the stop violated the Fourth Amendment.

When a seizure is not justified at its inception, evidence obtained as a direct result of that unlawful seizure is generally inadmissible, as such is derivative evidence obtained by exploitation of the illegality, absent an applicable exception such as attenuation, independent source, or inevitable discovery. *See Wong Sun*, 371 U.S. at 484–88; *Portillo-Aguirre*, 311 F.3d at 658. The Government does not contend that any such exception applies here, and the record does not reveal any intervening circumstances that would purge the taint of the initial, unconstitutional stop.

### B. Escalation to a *de facto* Arrest

Even assuming *arguendo* that Deputy Decell had reasonable suspicion to initiate a traffic stop for careless driving, this Court must still suppress the evidence because the encounter escalated into a *de facto* arrest unsupported by probable cause. As the Fifth Circuit explained in *Johnson* and *Bengivenga*, an investigative detention crosses the line into arrest when a reasonable

person in the suspect's position would believe he is under arrest and not free to leave, regardless of whether officers have formally announced an arrest.

The record shows that within roughly twenty seconds of first speaking with Rizo, Deputy Decell accused him of "bringing all these guys illegally across my country;" threatened to "call immigration"; to "take [Rizo's] ass to jail," and shifted questioning to the identity of the owner of the vehicle and how much Rizo was being paid. These statements show that Decell already had formed a firm conclusion that Rizo was entagled in criminal conduct. Rizo could sensibly reason that he faced imminent incarceration and federal immigration consequences. Accordingly, a reasonable person in Rizo's position (stopped on the roadside, surrounded by numerous passengers, confronted by an armed deputy who declared that Rizo was transporting people "illegally" and threatened with jail ) would believe that he was in custody and not free to terminate the encounter or drive away.

The Government contends that Decell possessed reasonable suspicion, escalating to probable cause, to suspect alien smuggling once he saw The Expedition packed with numerous individuals and heard Rizo's explanation that they were going to work in a vehicle belonging to a "friend." Decisions such as *Lopez-Moreno* recognize that an officer may extend a stop and even detain a driver to investigate immigration concerns when specific, articulable facts support a reasonable inference that passengers are undocumented. *See Lopez-Moreno*, 420 F.3d at 426–33. Here, however, the timeline and content of Decell's statements show that he leaped from initial observation to a conclusion of criminal alien transport within seconds, before conducting any meaningful inquiry into the occupants' identities, immigration status, specific destination, or travel history.

The dash-camera chronology recounted in the defense filings, and observed by this Court, reflects that Deputy Decell accused Rizo of "bringing all these guys illegally" and threatened them with jail before running any database checks, verifying documentation, or even allowing Rizo to complete his explanation for the trip. On these facts, Decell's early, uncorroborated conclusion about alien smuggling amounted to a hunch rather than probable cause, and the severity and immediacy of his threats transformed the detention into a *de facto* arrest unsupported by the requisite probable cause.

Once an encounter reaches custodial status without probable cause, the Fourth Amendment requires suppression of all evidence obtained as a result of that unlawful arrest, including the discovery of the passengers' immigration statuses, any physical evidence recovered from The Expedition, and all statements by Rizo and the passengers following the unlawful arrest, absent an applicable exception.

The Government has not invoked attenuation, independent source, or inevitable discovery and the record would not support such a showing in any event. The situation mirrors the Fifth Circuit's application of the fruit-of-the-poisonous-tree doctrine in *Portillo-Aguirre*, where the Court rejected the government's claim that the defendant's consent purged the taint because the consent followed closely on the heels of an unlawful detention and no meaningful intervening circumstances had occurred. Here, likewise, the Government has not shown "a break in the chain of events sufficient to refute the inference that the evidence was a product of a Fourth Amendment violation." *Portillo-Aguirre*, 311 F.3d at 658. On these facts, only suppression will serve the deterrent function of the exclusionary rule.

Accordingly, even under the alternative assumption that the initial stop was valid, the Court holds that law enforcement violated the Fourth Amendment by converting the stop into a custodial arrest without probable cause, and that the fruits of that arrest must be suppressed.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that: (1) the Government has not met its burden to show that Deputy Decell possessed reasonable suspicion or probable cause to stop defendant Rizo for a traffic offense; and (2) in the alternative, whether Deputy Decell lawfully stopped Rizo, Deputy Decell's actions during this encounter escalated into a de facto arrest without probable cause. Acting on a hunch, Deputy Decell accused Rizo of alien smuggling and called in immigration officials. Deputy Decell's aggressive conduct and rapid conclusion caused Deputy Decell to reach a result, which was premature at that stage of the proceedings. Deputy Decell chose to arrest Rizo solely because Rizo was driving a vehicle containing fourteen (14) Hispanic/Latino passengers. Deputy Decell had no information contradicting Rizo's statement that he and the passengers were all "going to work". Further, Deputy Decell made no inquiry as to whether these passengers were citizens of the United States, had work visas, had residences in Texas or Mississippi, spoke fluent English, or were related to Rizo and/or Rudy Jarmillo. Deputy Decell had no information from a third source contracting Rizo's travel arrangements. The record before this Court does not show that Deputy Decell individually questioned Jarmillo or any of the other fourteen (14) passengers, and learned contradictory information. As stated earlier, Deputy Decell acted on a suspicion unsupported by facts which may have provided probable cause.

Under the exclusionary rule, and consistent with *Wong Sun* and controlling Fifth Circuit precedent, all evidence obtained as a direct or derivative result of the unconstitutional stop and *de facto* arrest, including physical evidence seized from The Expedition and all post-stop statements by Rizo and the passengers, are inadmissible at trial as fruit of the poisonous tree.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that defendant Rene Rafael Rizo's Motion to Suppress Evidence [Doc. 78] is **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that all evidence, physical and testimonial, obtained as a result of the March 24, 2021, stop, detention, and arrest of Defendant Rizo and his passengers on Interstate 20 in Rankin County, Mississippi, is hereby **SUPPRESSED** and shall not be introduced by the Government in its case-in-chief at trial.

**SO ORDERED this the  27th   day of   April   , 2026.**

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**